UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BISHOP PERRY,

               Plaintiff,                    CIVIL ACTION NO. 18-cv-12914

         v.                        DISTRICT JUDGE GEORGE CARAM STEEH

BRIAN ROUSSEAU and            MAGISTRATE JUDGE MONA K. MAJZOUB
TONICA BATES,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Bishop Perry, proceeding *pro se*, filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983, against three employees of the Michigan Department of Corrections (MDOC), Sean Hart, Brian Rousseau, and Tonica Bates, on September 9, 2018, claiming violations of his First and Fourteenth Amendment rights under the United States Constitution. (Docket no. 1.) The court summarily dismissed Defendant Hart from this action on September 20, 2018. (Docket no. 5.) This matter comes before the Court on seven Motions: (1) Plaintiff's Motion for Preliminary Injunction (docket no. 10); (2) Plaintiff's Motion for Sanctions (docket no. 11); (3) Defendants' Motion for Partial Summary Judgment Based on Failure to Exhaust (docket no. 17); (4) Plaintiff's Motion Preliminary Injunction (docket no. 20); (5) Plaintiff's Motion for Sanctions (docket no. 22); (6) Plaintiff's Motion for Sanctions (docket no. 30); and (7) Plaintiff's Motion to Dismiss (docket no. 32).[1] Plaintiff responded to Defendants' Motion for Partial Summary Judgment.

---

[1] Also pending before the Court are Plaintiff's Emergency Motion for Court Order (docket no. 15), Motion for Discovery (docket no. 19), Motion to Compel (docket no. 29), and Motion for Taking Depositions (docket no. 37) and Defendants' Motion for Protective Order (docket no. 38), which will be addressed in an Opinion and Order issued contemporaneously with this Report and Recommendation.

(Docket no. 24.)   Defendants filed a Response to Plaintiff's second Motion for Preliminary Injunction, to which Plaintiff replied.   (Docket nos. 27, 31.)   Defendants also responded to Plaintiff's second and third Motions for Sanctions, and Plaintiff replied to Defendant's Response to his third Motion for Sanctions.  (Docket nos. 25, 34, 35.)  All pretrial matters have been referred to the undersigned for consideration. (Docket no. 6.)  The undersigned has reviewed the above-cited pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motions for Preliminary Injunction (docket nos. 10, 20), Plaintiff's Motions for Sanctions (docket nos. 11, 22, 30), and Plaintiff's Motion to Dismiss (docket no. 32) be **DENIED**.   It is also recommended that Defendants' Motion for Partial Summary Judgment Based on Failure to Exhaust (docket no. 17) be **GRANTED IN PART** and **DENIED IN PART**.   Should this latter recommendation be adopted, this matter will proceed on Plaintiff's claims against Defendants for the improper handling of his legal mail and his claim against Defendant Rousseau for retaliatory transfer.

## II.     REPORT

### A.     Plaintiff's Complaint

Plaintiff is currently incarcerated at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan; however, the events giving rise to the Complaint allegedly occurred while he was incarcerated at the Thumb Correctional Facility (TCF) in Lapeer, Michigan.  (*See* docket no. 1.)  Because Plaintiff is proceeding *pro se*, the court construes Plaintiff's Complaint liberally and holds it to a less stringent standard than similar pleadings drafted by attorneys.  *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Hahn v. Star Bank,* 190 F.3d 708, 715 (6th Cir. 1999).  And

for purposes of Defendants' Motion for Partial Summary Judgment, all justifiable inferences are drawn in favor of Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

In the Complaint, Plaintiff alleges that he requested a prisoner-to-prisoner mail form from Assistant Resident Unit Supervisor (ARUS), Y. Strange, on January 2, 2017, to write to a witness in an ongoing civil case. Defendant Hart approved the form and ARUS Strange took both of Plaintiff's approved legal mail envelopes to the mail room on January 5, 2017. Plaintiff alleges that he was moved to a different unit within the facility for retaliation purposes on January 6, 2017. Defendant ARUS Rousseau allegedly met Plaintiff as soon as he entered the new unit and told Plaintiff that he has it out for anyone that files a case against the MDOC. Ten minutes later, Defendant Rousseau allegedly told Plaintiff that the mail room had called Defendant Rousseau to the control center and that Defendant Bates gave Defendant Rousseau Plaintiff's two expedited legal mail envelopes. Plaintiff allegedly responded that he would report Defendant Rousseau to his supervisor if he did not take his mail back to the mail room. Plaintiff alleges that he wrote to the witness's family on April 23, 2018, to see if the witness had ever received the legal mail at issue. The witness's mother allegedly responded to Plaintiff on May 9, 2018, and indicated that the witness never received the mail from Plaintiff. Plaintiff claims that Defendant Bates violated the MDOC's operating procedure regarding prisoner mail and retaliated against Plaintiff for having an ongoing legal case. Plaintiff further claims that Defendants conspired to prevent him from accessing the courts. (Docket no. 1; *see also* docket no. 17-2 at 10, 20.)

Next, Plaintiff alleges that on or about January 23, 2017, Defendant Rousseau called Plaintiff to his office and told him that he would be called to the control center for a video deposition in the coming week; he later informed Plaintiff that the deposition had been postponed.

Plaintiff asserts that he kited Defendant Rousseau for any updates regarding the date of the deposition, and when Defendant Rousseau stopped responding to his kites, Plaintiff told him that he would be reporting Defendant Rousseau to his supervisor.  When Deputy Warden Greason came to Plaintiff's unit, Plaintiff asked him if he had received Plaintiff's kite, and Deputy Warden Greason responded in the affirmative.  Plaintiff alleges that Defendant Rousseau retaliated against him the next day by threatening to "ride Plaintiff out" for going over his head to his supervisor and allegedly told Plaintiff that if he ever went over his head again, Plaintiff would be "outta of here" [sic].  On April 16, 2017, Defendant Rousseau allegedly told Plaintiff that the video deposition was set for that morning at 10:00 a.m. and that he had to keep the date from Plaintiff to teach Plaintiff a lesson.  Plaintiff alleges that on June 18, 2017, Defendant Rousseau made good on his threat and transferred Plaintiff to MCF for going over his head to Deputy Warden Greason.

Plaintiff claims that Defendants violated his due process rights and his right to be free from retaliation under the First and Fourteenth Amendments of the Constitution.  Plaintiff seeks punitive and compensatory damages and injunctive relief, among other things.

**B.    Law and Analysis**

*1.    Plaintiff's Motions for Preliminary Injunction [10] [20]*

Plaintiff's Motion for Preliminary Injunction at docket no. 20 is duplicative of Plaintiff's Motion for Preliminary Injunction at docket no. 10.  In these Motions, Plaintiff asserts that when Defendant Rousseau transferred Plaintiff to MCF, he knew all along that Plaintiff's pending civil case was based out of the Brooks Correctional Facility (LRF), also located in Muskegon, Michigan.  Plaintiff believes that Defendant Rousseau emailed the correctional staff at MCF and made them aware of Plaintiff's transfer because he has been harassed since the day he arrived. Plaintiff asserts that LRF and MCF share gossip and officers, and while not explicitly stated,

Plaintiff impliedly asserts that the staff at MCF are harassing him because of the claims he made against a correctional officer at LRF.  Specifically, Plaintiff claims that he is strip searched on a regular basis, the staff do whatever they can to belittle him, squeeze his toothpaste out, and break off his deodorant, and that his cell is always messed up.  As relief, Plaintiff asks the court to transfer him to either the Macomb Correctional Facility in Macomb, Michigan or the G. Robert Cotton Correctional Facility in Jackson, Michigan.  Plaintiff asserts that both of these facilities offer prisoners the opportunity to work as a dog handler, which will enable him to earn enough money to retain and pay his attorney, and that both of them are near his family.  He also seeks a transfer hold once he is placed at one of those facilities, so he will no longer be bounced around from facility to facility.  Finally, Plaintiff seeks a court order preventing anyone from taking his television or his Walkman for any reason.

Federal Rule of Civil Procedure 65 authorizes the issuance of preliminary injunctions and temporary restraining orders.  The court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue.  *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).  "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted).  "The issuance of preliminary injunctive relief is committed to the discretion of the district court."  *El-Shabazz v. Dunn*, No. 2:05-cv-17, 2006 WL 3500621, at *10 (W.D. Mich. Dec. 4, 2006) (citing *Planned Parenthood Ass'n v. City of Cincinnati,* 822 F.2d 1390, 1393 (6th Cir. 1987)).  In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury

without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (4) the public interest will be served if the injunction issues. *Overstreet*, 305 F.3d at 573 (citation omitted). While these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Id. See also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

A preliminary injunction "is not designed to protect [a prisoner] from the adverse consequences of incorrigible behavior or to provide him the most comfortable confinement possible." *Arrington v. Scott*, No. 1:12-cv-529, 2013 WL 1080298, at *1 (W.D. Mich. Jan. 7, 2013), *report and recommendation adopted*, No. 1:12-CV-529, 2013 WL 1080296 (W.D. Mich. Mar. 14, 2013). Rather, its purpose "is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends he was or will be harmed through the illegality alleged in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (citation and internal quotation marks and alterations omitted). Thus, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* (citation omitted). That is, "[i]f the plaintiff's claim in the motion for injunctive relief does not relate to the plaintiff's original claim in the complaint, injunctive relief is improper." *Rayford v. Millay*, No. 1-14-00122, 2015 WL 2454673, at *1 (M.D. Tenn. May 22, 2015) (citing *De Beers Consol. Mines v. U.S.,* 325 U.S. 212, 220 (1945); *Colvin,* 605 F.3d at 299-300).

Here, while Plaintiff's motions for injunctive relief stem from the harassment that he is allegedly enduring as a result of Defendant Rousseau's alleged retaliatory transfer, at no point in the Complaint does Plaintiff mention any of the harassment that he alleges in the instant Motion or name any of the MCF staff who are allegedly harassing him. (*See* docket no. 1.) Plaintiff's

assertions of harassment by the MCF staff are new claims against individuals who are not defendants in this action. "A motion for a TRO or preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable." *Arrington*, 2013 WL 1080298, at \*1.

Plaintiff has no likelihood of succeeding on the merits of claims that he has not alleged in the Complaint. And Plaintiff has not even attempted to show a strong or substantial likelihood of success on the merits of the claims that he did allege in the Complaint. This factor militates against the issuance of a preliminary injunction.

Next, in determining whether a plaintiff has shown irreparable injury, courts consider the substantiality of the injury alleged, the likelihood of its occurrence, and the adequacy of the proof provided. *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). At best, Plaintiff has alleged ongoing general harassment, the substantiality of which does not support the issuance of preliminary injunctive relief. The fact that Plaintiff is being subjected to regular strip searches and cell searches is explained by Plaintiff's own admission that the staff at MCF feel as though he is a threat to the orderly administration of the prison. Notably, Plaintiff does not challenge the reasonableness of the manner in which the strip searches are performed. Additionally, Plaintiff has administrative and legal remedies available to him to address his claims of harassment against the staff at MCF. In fact, he has already invoked his administrative remedies in this regard by filing grievances for harassment, retaliation, and refusing to make copies. (*See* docket no. 31 at 2.) This "possibility that adequate compensatory or other corrective relief [is] available . . ., in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Furthermore, "where a prison inmate seeks an order enjoining state prison officials, [courts must] proceed with the utmost care and must recognize the unique nature of the prison setting." *Schuh v. MDOC*, No. 09-982, 2011 WL 7139457, at *3 (W.D. Mich. Nov. 10, 2011) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984)).   Courts should give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995).   These officials "are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts."  *Schuh*, 2011 WL 7139457 at *3 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).   "[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."  *Bell*, 441 U.S. at 548.

Importantly, a prisoner has no Constitutional right to choose his place of confinement; to the contrary, the placement of prisoners within the state correctional system is a basic administrative endeavor in which the courts should not intervene.  *See Olim v. Wakinekona*, 461 U.S. 238, 245-46, (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir.1986).   To grant Plaintiff the relief he seeks would require the court to squarely interject itself into the MDOC's administration.   For this court to interfere with the operation of the state's prison facilities on the facts of this case would cause substantial harm to others.  *See Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984) (courts ill-equipped to deal with problems of prison administration and reform).   And such an intervention is not in the public interest.  Plaintiff's Motions for Preliminary Injunction should therefore be denied.

2.      *Plaintiff's Motions for Sanctions [11] [22]*

Like Plaintiff's Motions for Preliminary Injunction, Plaintiff's Motion for Sanctions at docket no. 22 is duplicative of his Motion for Sanctions at docket no. 11.  In these Motions, Plaintiff moves pursuant to Federal Rule of Civil Procedure 11 for $3,000 in sanctions against Defendant Bates and $4,000 in sanctions against Defendant Rousseau for violating his due process rights by not following the MDOC's operating procedure (OP) 05.03.118 regarding the handling of Plaintiff's expedited legal mail.  Plaintiff's Motions are substantively and procedurally improper.

Federal Rule of Civil Procedure 11 provides that every pleading and other paper must be signed by at least one attorney of record or by a party if that party is unrepresented.   Fed. R. Civ. P. 11(a).  By presenting to the court such a pleading or paper, the attorney or *pro se* party certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the paper is not being presented for any improper purpose, such as to harass or cause unnecessary delay.  Fed. R. Civ. P. 11(b)(1).  A Rule 11 motion for sanctions "must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  Here, Plaintiff does not describe conduct violative of Rule 11(b), he describes Defendants' allegedly unconstitutional conduct that is the subject of his Complaint.  This conduct is not the proper subject of a Rule 11 motion for sanctions; it will be addressed through the natural progression of this civil action.

Furthermore, a Rule 11 "motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  *Id*. The Sixth Circuit has held that "sanctions under Rule 11 are unavailable unless the motion for

sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court." *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997). There is no indication that Plaintiff complied with the safe-harbor rule. Therefore, Plaintiff's Motions for Sanctions violate the substantive and procedural requirements of Rule 11 and should be denied accordingly.

### 3.    *Defendants' Motion for Partial Summary Judgment [17]*

Defendants move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on the basis that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act with regard to certain claims. (Docket no. 17.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action.  Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Michigan Department of Corrections (MDOC) Policy Directive (PD) 03.02.130 regarding prisoner grievances[2] provides that prior to submitting a written grievance, a prisoner must attempt to resolve a grievable issue with the staff member involved within two business days after becoming aware of the issue, unless prevented by circumstances beyond his control.  MDOC

---

[2] Defendants attached a copy of MDOC Policy Directive 03.02.130 to their Motion.  (Docket no. 17-3.)

PD 03.02.130(P).  If not resolved, the prisoner may file a Step I grievance within five days of attempting to resolve the grievable issue with the staff member.  MDOC PD 03.02.130(V).  The Step I grievance must include "the <u>facts</u> involving the issue being grieved (i.e., who, what when, where, why, how)," and the "[d]ates, times, places, and names of all those involved in the issue being grieved."  MDOC PD 03.02.130(R) (emphasis in original); *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, *supra*, ("[W]e understand [MDOC] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process.").  If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due."  MDOC PD 03.02.130(BB).  A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due."  MDOC PD 03.02.130(FF).  A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with the policy.  MDOC PD 03.02.130(B).

It is not the prisoner's burden to plead or prove that he has successfully exhausted his administrative remedies in his complaint.  *Jones*, 549 U.S. at 216.  Rather, failure to exhaust administrative remedies is an affirmative defense, *id.*, and so Defendants carry the burden of proof on the issue, *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012).  "In cases where the party

12

moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455-56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). In such cases, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

Defendants do not dispute that Plaintiff exhausted his administrative remedies with regard to his claim against Defendant Rousseau for retaliatory transfer; however, they argue that summary judgment in their favor is warranted on Plaintiff's other claims because he failed to exhaust his administrative remedies related thereto in a timely manner. (Docket no. 17.) To support their Motion, Defendants have submitted Plaintiff's Step III Grievance Report, which identifies all grievances that Plaintiff pursued through Step III of the grievance process between January 1, 2012 and November 1, 2018, along with the underlying documentation for those grievances. (Docket no. 17-2.) Two grievances are at issue here: Grievance no. TCF-18-05-0193-28e ("0193"), which Plaintiff filed against Defendant Bates, and Grievance no. TCF-18-05-0195-28e ("0195"), filed against Defendant Rousseau. (*Id.* at 7-11, 17-21.)

In both grievances, dated May 9, 2018, Plaintiff asserts that on April 23, 2018, he wrote to the mother of his witness to ask her if her son had received Plaintiff's prisoner-to prisoner expedited legal mail, and on May 9, 2018, she responded that her son had not received it. In Grievance no. 0193, Plaintiff asserts that Defendant Bates retaliated against him and violated his due process rights and MDOC OP 05.03.118 on January 6, 2017, when, instead of placing Plaintiff's expedited legal mail in the outgoing mail, she opened it and called Defendant Rousseau

to the mail room to look at it and see that Plaintiff had an ongoing civil case against the MDOC. Plaintiff asserts that Defendant Bates falsified the legal mail form by indicating that she placed the mail in the outgoing mail when in fact she did not. He also asserts that Defendants Bates and Rousseau conspired with one another to prevent Plaintiff from accessing the courts. (Docket no. 17-2 at 20.) In Grievance 0195, Plaintiff asserts that on January 6, 2017, Defendant Rousseau violated MDOC OP 05.03.118 and retaliated against Plaintiff for pursuing a civil case against the MDOC. Specifically, Plaintiff asserts that Defendant Rousseau harassed Plaintiff by forcing him to perform a "mock pack up" of the belongings in his cell and that Defendant Rousseau confronted Plaintiff with his expedited legal mail to teach him a lesson. Plaintiff asserts that Defendant Rousseau told him that he would take the mail back to the mail room, "but now [I] see he never did." (*Id*. at 10.)

The MDOC denied these two grievances as untimely. In doing so, the MDOC quoted the relevant grievance policy and procedure requiring Plaintiff to attempt to resolve the grievable issue with the staff member involved within two days of becoming aware of the issue and then file a Step I grievance within five days of any unsuccessful attempt at resolution. The MDOC reasoned that the alleged incident took place over a year before Plaintiff filed the grievances, noting that Plaintiff stated that the incident took place in January 2017, but the grievances were written on May 9, 2018, and were not received at TCF until May 17, 2018. The MDOC further reasoned that Plaintiff offered no explanation for why he waited over a year to file the grievances. The MDOC upheld the rejection of these grievances on appeal at Steps II and III of the grievance process. (Docket no. 17-2 at 7, 9, 11, 17, 19, 21.)

The MDOC's rejection of Plaintiff's grievances suffers from one fatal flaw: the MDOC overlooked Plaintiff's assertion that he learned that his witness had not received his expedited legal

mail on May 9, 2018. At that juncture and through circumstances beyond his control, Plaintiff was no longer incarcerated at TCF, so it would have been nearly impossible for Plaintiff to attempt to resolve the issue with Defendants Bates and Rousseau prior to filing a written grievance, as is required by MDOC PD 03.02.130(P). Additionally, the grievance documentation indicates that Plaintiff composed and mailed the grievances to TCF on May 9, 2018, the day that he became aware the grievable issue, which falls within the five-business-day window for filing a Step I grievance. Accordingly, the undersigned finds that Plaintiff's grievances regarding the alleged improper handling of Plaintiff's legal mail were improperly rejected as untimely. Plaintiff's other complaints in Grievance nos. 0193 and 0195 related to Defendants' actions on January 6, 2017, *e.g.*, that Defendant Rousseau harassed him by forcing him to do a "mock pack up," were properly rejected as untimely, as Plaintiff was aware of Defendants' grievable actions at the time they occurred. Defendants' Motion for Partial Summary Judgment should therefore be granted in part and denied in part.

4.    *Plaintiff's Motion for Sanctions [30] and Motion to Dismiss [32]*

Plaintiff moves for sanctions against Defendants and moves to dismiss this matter pursuant to Federal Rule of 12(b)(6) on the basis that Defendants produced fraudulent documents in response to Plaintiff's discovery requests. The documents at issue appear to be two pages of TCF's Legal Mail and Court Filing Fee Logbook, which contain four entries pertaining to Plaintiff's legal mail. (Docket no. 30 at 4-5.) Plaintiff says that he does not trust these documents because (1) one of the pages contains the number "33" on top and has been altered from its original form; (2) one of the entries does not contain the date and time that the mail was received from housing unit staff; and (3) in that same entry, ARUS Strange's initials are different from his initials in other entries.

Plaintiff seeks sanctions in the amount of $10,000 per day until Defendants produce the original documents and dismissal.

As an initial matter, Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted and is not the proper legal vehicle to address discovery sanctions. Plaintiff does not otherwise identify the rule under which he seeks sanctions from Defendants in this instance. Nevertheless, Plaintiff has not established a factual basis for sanctions related to these documents. The evidence reflects that Defendants produced several pages of TCF's Legal Mail Logbook to Plaintiff in response to his discovery requests. (Docket no. 33-2.) Several of these pages, including the two pages at issue, contain numbers at the top of the log, from 31 to 41. These numbers do not suggest any fraudulent activity and do not appear to relate in any way to the entries in the log. To the extent that these numbers on the pages are not contained on the original documents, they do not constitute a material alteration. Nor do the redactions of the log entries related to prisoners other than Plaintiff or the Bates numbers inserted by Defendants at the bottom of each page. These two alterations made by Defendants are standard discovery practices. Additionally, Defendants explain that the absence of the date and time in one of the log entries is consistent with the original document on file at TCF. Defendants also explain that the initials on the log entry at issue, "YS/tmb," are shorthand for Yarnice Strange, as written by Defendant Bates. (Docket no. 34 at 4.) This sufficiently explains the discrepancy in ARUS Strange's initials identified by Plaintiff. Plaintiff has no evidence that Defendants made any fraudulent material alterations to the Logbook pages at issue. His unsupported distrust in the documents is not enough. Plaintiff's third Motion for Sanctions and Motion to Dismiss should be denied.

### D.    Conclusion

For the reasons stated above, Plaintiff's Motions for Preliminary Injunction (docket nos. 10, 20), Plaintiff's Motions for Sanctions (docket nos. 11, 22, 30), and Plaintiff's Motion to Dismiss (docket no. 32) should be **DENIED**, and Defendants' Motion for Partial Summary Judgment Based on Failure to Exhaust (docket no. 17) should be **GRANTED IN PART** and **DENIED IN PART**.  Should this latter recommendation be adopted, this matter will proceed on Plaintiff's claims against Defendants for the improper handling of his legal mail and his claim against Defendant Rousseau for retaliatory transfer.

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise

response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  August 6, 2019            s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  August 6, 2019            s/Sandra Osorio
                                  Acting Case Manager