UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BISHOP PERRY,

        Plaintiff,

v.

BRIAN ROUSSEAU, et al.,

        Defendants.
_____/

Case No. 18-12914
District Judge George Caram Steeh
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

On September 17, 2018 Plaintiff Bishop Perry, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), file a *pro se* civil complaint under 42 U.S.C. § 1983, alleging retaliation for his exercise of a protected right, in violation of the First Amendment. Before the Court is a motion for summary judgment filed by Defendants Brian Rousseau and Tonica Bates [ECF No. 69], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).[1]  For the reasons discussed below, I recommend that the motion be GRANTED.

---

[1] Following this Court's previous dismissal of certain claims and Defendants, two claims remain: (1) a retaliation claim against Defendants Rousseau and Bates for mishandling his legal mail, in violation of the First and Fourteenth Amendments; and (2) a claim against Rousseau for retaliatory transfer.

## I. FACTS

Magistrate Judge Mona K. Majzoub summarized the facts as alleged in Plaintiff's complaint as follows:[2]

> "In the Complaint, Plaintiff alleges that he requested a prisoner-to-prisoner mail form from Assistant Resident Unit Supervisor (ARUS), Y. Strange, on January 2, 2017, to write to a witness in an ongoing civil case. Defendant Hart approved the form and ARUS Strange took both of Plaintiff's approved legal mail envelopes to the mail room on January 5, 2017. Plaintiff alleges that he was moved to a different unit within the facility for retaliation purposes on January 6, 2017. Defendant ARUS Rousseau allegedly met Plaintiff as soon as he entered the new unit and told Plaintiff that he has it out for anyone that files a case against the MDOC. Ten minutes later, Defendant Rousseau allegedly told Plaintiff that the mail room had called Defendant Rousseau to the control center and that Defendant Bates gave Defendant Rousseau Plaintiff's two expedited legal mail envelopes. Plaintiff allegedly responded that he would report Defendant Rousseau to his supervisor if he did not take his mail back to the mail room. Plaintiff alleges that he wrote to the witness's family on April 23, 2018, to see if the witness had ever received the legal mail at issue. The witness's mother allegedly responded to Plaintiff on May 9, 2018, and indicated that the witness never received the mail from Plaintiff. Plaintiff claims that Defendant Bates violated the MDOC's operating procedure regarding prisoner mail and retaliated against Plaintiff for having an ongoing legal case. Plaintiff further claims that Defendants conspired to prevent him from accessing the courts. (Docket no. 1; see also docket no. 17-2 at 10, 20.)
>
> "Next, Plaintiff alleges that on or about January 23, 2017, Defendant Rousseau called Plaintiff to his office and told him that he would be

---

[2] Following Judge Majzoub's retirement, this case was reassigned to me on November 4, 2019, pursuant to Administrative Order 19-AO-032.

called to the control center for a video deposition in the coming week; he later informed Plaintiff that the deposition had been postponed. Plaintiff asserts that he kited Defendant Rousseau for any updates regarding the date of the deposition, and when Defendant Rousseau stopped responding to his kites, Plaintiff told him that he would be reporting Defendant Rousseau to his supervisor. When Deputy Warden Greason came to Plaintiff's unit, Plaintiff asked him if he had received Plaintiff's kite, and Deputy Warden Greason responded in the affirmative. Plaintiff alleges that Defendant Rousseau retaliated against him the next day by threatening to "ride Plaintiff out" for going over his head to his supervisor and allegedly told Plaintiff that if he ever went over his head again, Plaintiff would be "outta of here" [sic]. On April 16, 2017, Defendant Rousseau allegedly told Plaintiff that the video deposition was set for that morning at 10:00 a.m. and that he had to keep the date from Plaintiff to teach Plaintiff a lesson. Plaintiff alleges that on June 18, 2017, Defendant Rousseau made good on his threat and transferred Plaintiff to MCF for going over his head to Deputy Warden Greason.

"Plaintiff claims that Defendants violated his due process rights and his right to be free from retaliation under the First and Fourteenth Amendments of the Constitution. Plaintiff seeks punitive and compensatory damages and injunctive relief, among other things." ECF No. 42, PageID.457-458; *Perry v. Rousseau*, No. 18-CV-12914, 2019 WL 6121852, at *2 (E.D. Mich. Aug. 6, 2019), report and recommendation adopted, No. 18-CV-12914, 2019 WL 4126559 (E.D. Mich. Aug. 30, 2019).

Appended to Defendants' motion as Exhibit A is the affidavit of Brian Rousseau. ECF No. 69, PageID.591-593. Regarding the Plaintiff's legal mail, Rousseau states that on January 6, 2017, he drafted a misconduct citation against the Plaintiff for disobeying a direct order, i.e., "refusing to take his unapproved legal mail from me." *Id*., PageID.592, ¶ 7. The misconduct indicated that the

-3-

incident at issue occurred at 12:43 p.m. and that Rousseau wrote the misconduct at 2:40 p.m. However, Rousseau states, "I did not submit the misconduct, as soon after I drafted it, I received notification that the legal mail had been approved." *Id*. He further states that at 3:18 p.m. on January 6, 2017, he sent an email to Defendant Bates that Plaintiff was approved for legal correspondence with prisoner Abdullah. Rousseau states, "I sent this email after I received notice from TCF's Administrative Assistant that the correspondence was approved." *Id*., PageID. 593, ¶ 8. He states that he did not conspire with anyone to interfere with Plaintiff's legal mail. *Id*., PageID.592, ¶ 5.

Rousseau states that he did not request that the Plaintiff be transferred to his unit on January 6, 2017; rather, he received an email the previous day from ARUS Strange "that several prisoners would be moved from her unit to make room for Mott College prisoners on January 6, 2017." *Id*., PageID.592, ¶ 3. Defendant Perry was on the list to be moved to Rousseau's unit. *Id*. Rousseau states that he does not have the authority to transfer prisoners, and that prisoners are transferred in and out of the Thumb Correctional Facility "and all throughout the MDOC all the time for multitudes of different reasons." *Id.* PageID.593, ¶ 9.

Defendants' Exhibit B is the January 5, 2017 email from Strange, containing a list of "Mott College moves." Plaintiff's name is number 3 on that list. ECF No. 69, PageID.595-596.

Defendants' Exhibit C is the affidavit of Tonica Bates, who is employed in the Thumb Correctional Facility mail room. She states that when she receives prisoner-to-prisoner mail, she "checks the approval system to make sure they are approved to correspond with one another." *Id*. PageID.599, ¶ 4. On January 5, 2017, three Expedited Legal Mail forms for Plaintiff were logged in the Outgoing Legal Mail Logbook. *Id*. ¶ 5. One of the items, addressed to a prisoner Abdullah, had a notification in the logbook stating "return to inmate unapproved prisoner to prisoner. However, that notation was subsequently whited out, "with a notation that the mail was placed in the outgoing mail on January 10, 2017 at 1400 hours." *Id*.

Defendant Bates also states that the Outgoing Mail Logbook shows that Plaintiff submitted five items of legal mail between January 5 and January 10, 2017. The two postage debits for January 6 correspond to outgoing mail to prisoners Adams and Davis, and the three postage debits for January 10 correspond to one item sent to prisoner Abdullah, one to the Attorney General's Office, and one to the District Court for the Eastern District of Michian. *Id*.

PageID.599-600, ¶ 6. Bates states, "I did not conspire with anyone to interfere with prisoner Perry's legal mail." *Id*. PageID.599, ¶ 3.

Defendants' Exhibit D is the Legal Mail Logbook corroborating Bates' affidavit.

Defendants' Exhibit G consists of the MDOC Forms CSJ-318, indicating when each of the five pieces of legal mail were placed in the outgoing mail, including a notation that Bates placed the envelope addressed to prisoner Abdullah in the mail on January 10, 2017. The form for Abdullah also has the "not approved" notation crossed out, and replaced by "approved per S. Hart."

Defendants' Exhibit J is the misconduct report drafted by Defendant Rousseau at 2:40 p.m. on January 6, 2017, but which Rousseau states he did not file.

Defendants' Exhibit M is Plaintiff's transfer order, dated June 7, 2017. The comments (which are redacted) state, "This transfer will accommodate bed space needs at ___for incoming___prisoner transferring to ___in leiu [sic] of PC. " ECF No. 69, PageID.640.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.  DISCUSSION

#### A.  Retaliation and Due Process–Rousseau and Bates

Plaintiff alleges that on January 6, 2017, Defendant Rousseau had him transferred, within the prison, to his (Rousseau's) unit in retaliation for Plaintiff's litigation against the MDOC. He also alleges that Rousseau and Bates further retaliated against him by interfering with his legal mail.

In *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that

would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

There can be no dispute that engaging in litigation against the MDOC and sending legal mail in support of that litigation is protected conduct. However, Plaintiff's transfer from one housing unit to another within the same facility does not constitute an adverse action, that is, on that would deter a person of ordinary firmness from exercising his or her First Amendment rights. A prisoner has no constitutional right to be confined in any particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). There are, of course, circumstances where a transfer might rise to the level of an adverse action. In *Thaddeus-X*, the Court noted that '[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse." *Id*., 175 F.3d at 396. But that was not what happened here; this was an unremarkable transfer from

one unit to a different but similar unit.

Moreover, there is no causal connection between Plaintiff's protected conduct and his transfer into Rousseau's unit. ARUS Strange's email, which includes a list of a number of prisoners being moved (Defendants' Exhibit B), shows that Plaintiff was not moved for retaliatory reasons, but that several prisoners, including Plaintiff, "would be moved from her unit to make room for Mott College prisoners on January 6, 2017." This corroborates Rousseau's affidavit that he did not request that the Plaintiff be transferred to his unit on January 6, 2017.

Plaintiff's claim that Rousseau and Bates retaliated against him by interfering with his legal mail likewise fails. There was no adverse action. At most, Plaintiff has shown that his inmate-to-inmate letter to Abdullah was delayed by a few days, from January 6 to January 10. But it was in fact sent out, and Plaintiff has not shown that this minor delay in any way affected or interfered with his litigation. "When a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). For some (non-retaliatory) reason, the Abdullah letter was mistakenly mis-

characterized as improper legal mail. A few days later, the mistake was corrected and the letter was mailed out. While perhaps frustrating for the Plaintiff, any harm was *de minimis*.

In addition, while Rousseau drafted a misconduct report based on his then-belief that the Abdullah letter was not proper legal mail, he did not file the report, and Plaintiff suffered no disciplinary action as a result.

In addition, the claim that there was a causal connection between the Plaintiff's protected conduct and the short delay in mailing the Abdullah letter is defeated by the facts that (1) the letter in fact was mailed, and (2) all of the other legal mail from that period was processed and sent out without any problems.

Finally, even if there was some violation of an MDOC Policy Directive or other administrative rule in the handling of Plaintiff's mail, that would not constitute a due process violation. *See Grinter v. Knight*, 532 F.3d 567, 574-575 (6th Cir. 2008)(citing *Olim v. Wakinekona*, 461 U.S. at 250). Section 1983 is directed at violations of federal law, and does not provide a remedy for state law violations. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

### B. Plaintiff's Transfer

Plaintiff alleges that in January of 2017, Defendant Rousseau threatened him with "riding him out," that is, having him transferred to another facility, for "going over his head." *Complaint*, ECF No. 1, PageID.2, ¶¶ 8-10. On or about June 7, Plaintiff was transferred. Plaintiff claims that Rousseau caused him to be transferred for retaliatory reasons.

First, as explained in the preceding section, Plaintiff's mere transfer to another prison does not constitute an adverse action. *See Olim v. Wakinekona*; *Siggers-El v. Barlow*. And, there is no causal connection between the Plaintiff's protected conduct and the June transfer. To the contrary, the transfer order notes, "This transfer will accommodate bed space needs at ___for incoming___prisoner transferring to ___in leiu [sic] of PC. " *Defendants' Exhibit M*, ECF No. 69, PageID.640. Defendant Rousseau did not sign this order, and he states that he has no authority to transfer prisoners in any event. Rather, he states that prisoners are transferred in and out of the Thumb Correctional Facility "and all throughout the MDOC all the time for multitudes of different reasons." *Id.* PageID.593, ¶ 9.

Furthermore, the length of time between Rousseau's alleged January, 2017 threat and Plaintiff's June, 2017 transfer attenuates any temporal inference of retaliation. *See Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985), abrogated on

other grounds by *Walker v. Thompson*, 288 F.3d 1005, 1008–09 (7th Cir.2002) (five months between filing complaint and alleged retaliatory conduct negates any inference of retaliation); *Kelly v. Municipal Courts*, 97 F.3d 902, 912 (7th Cir.1996) (four month span between protected conduct and alleged adverse action attenuates inference of retaliation).

Finally, the plaintiff in a § 1983 case must show that a named defendant was personally involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). The transfer order, along with Rousseau's affidavit indicating that he has no authority to order transfers in any event, shows that Rousseau did not have any personal involvement in Plaintiff's transfer.

### IV.  CONCLUSION

I recommend that Defendants Brian Rousseau and Tonica Bates' motion for summary judgment [ECF No. 69] be GRANTED, and that these Defendants be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further

right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen  
R. Steven Whalen  
United States Magistrate Judge

Dated: February 16, 2021

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was sent to parties of record on February 16, 2021 electronically and/or by U.S. mail.

                                                      s/Carolyn M. Ciesla
                                                      Case Manager